# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ADRIENNE C. CORTI,
                    *Plaintiff-Appellee,*

v.                                          No. 01-1833

STORAGE TECHNOLOGY CORPORATION,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Walter E. Black, Jr., Senior District Judge.
(CA-97-608-B)

Argued: April 3, 2002

Decided: September 18, 2002

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge King joined. Judge Niemeyer wrote a concurring opin-
ion.

## COUNSEL

**ARGUED:** Stephen Michael Silvestri, MILES & STOCKBRIDGE,
P.C., Baltimore, Maryland, for Appellant. Patricia Ann Smith, LAW
OFFICES OF PATRICIA A. SMITH, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Suzanne W. Decker, MILES & STOCK-
BRIDGE, P.C., Baltimore, Maryland, for Appellant.

**OPINION**

GREGORY, Circuit Judge:

Adrienne Corti brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, against Storage Technology Corporation (StorageTek) for gender based employment discrimination after she was demoted. A jury returned a verdict in favor of Corti, awarding her $100,000 in punitive damages, but no compensatory damages. On appeal, StorageTek argues, *inter alia*, that the district court erred in denying its Rule 50(a) motion for judgment as a matter of law and that the jury's award of punitive damages cannot stand without an award of compensatory damages.[1] Finding no error, we affirm.

I.

In 1993, Adrienne Corti was hired by StorageTek as a Financial Services Manager (FSM) in its Silver Spring, Maryland office. StorageTek is a Colorado-based company that manufactures, sells and services storage devices for mainframe and network computer systems. As a FSM in StorageTek's Federal Systems Division, Corti worked with sales representatives to structure transactions and respond to federal bids. She engaged in price negotiations and lease structuring, and worked towards a quota that was based in part on sales revenue. Corti received a base salary, along with commissions and bonuses.

---

[1]StorageTek also asserts that the district court erred in admitting a substantial amount of non-probative evidence and that this evidence prejudiced the jury. Appellant's Opening Brief, 32-34. After thoroughly reviewing the record, the applicable law, and the extensive briefs submitted by the parties, and having had the benefit of oral argument, we find no abuse of discretion in the court's admission of the challenged evidence, *see Bank of Montreal v. Signet Bank*, 193 F.3d 818, 833 (4th Cir. 1999). We also find no abuse of discretion in the court's award of back pay, *see Dennis v. Columbia Colleton Medical Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002); *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985), or in its award of pre-judgment interest, *see Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993), and we decline to address these issues further.

Corti met her quota in her first year at StorageTek. In 1994, her second year, she met her quota and was ranked the number one FSM in the Mid-Atlantic region. For this, she became part of StorageTek's "Master's Club," and was rewarded with a trip to Hawaii. In 1995, Corti not only ranked number one in her region, she was StorageTek's top FSM in the entire United States and Canada.

Despite her ability to meet and exceed quota, Corti encountered problems at StorageTek, most stemming from her interactions with District Sales Manager Edwin Hartman. Though she reported directly to Curt Mikkelsen, the regional FSM, it was necessary for Corti to work closely with Hartman and his sales representatives.[2] The evidence established that Hartman did not communicate well with Corti. He failed to inform her about important meetings and he withheld key account information. Hartman told Corti he had never worked with a woman equal before, and he was used to having women working for him. After one off-site function, when part of the team went to play golf, Hartman told Corti and another woman sales representative that they should go shopping because golf was a "guy thing." Corti's complaints about Hartman to Mikkelsen and Bob Silk fell on deaf ears.

In late 1995, Silk and Hartman met with Corti to inform her that her position had been eliminated. Silk informed Corti that the decision to remove her from her position was part of a reorganization. Shocked and confused, Corti accepted a Customer Service Sales Representative (CSSR) position, which was presented to her as her only option to remain with the company.[3]

Corti later learned that her position was given to Curt Mikkelsen. Because of a company-wide restructuring, Mikkelsen's regional FSM position had been eliminated. Silk had decided to move Mikkelsen

---

[2]Both Hartman and Mikkelsen reported to Bob Silk, regional Vice President for the Federal Systems Division

[3] The new position was clearly a demotion, both in compensation and status. Corti had no experience in sales, and as a CSSR, Hartman was her direct supervisor. Her problems with Hartman continued, and Corti voluntarily sought a transfer to a different division. She was ultimately terminated for poor performance.

into a FSM position, which meant that one of the three current FSMs would lose his or her position to make room for Mikkelsen.

Of the three FSMs in the Federal Systems Division, Corti was the only woman. The other two FSMs, Greg Tignor and Bill Rowan, retained their FSM positions. Corti was told that her performance evaluations were the reason for her demotion.[4] These evaluations, reviewed by Silk, were prepared by Mikkelsen, with Hartman's input.[5] While Corti was ranked number one FSM in her region, and her supervisors knew she would be a top FSM nationally in 1995, both Tignor and Rowan had consistently experienced problems meeting quota. The only time Tignor and Rowan reached quota was when the company offered quota relief.

In February of 1997, Corti filed a complaint against StorageTek in the United States District Court for the District of Maryland, alleging sex discrimination arising out of StorageTek's decision to demote her. After extensive discovery, StorageTek moved for summary judgment, and the district court granted the motion. Corti appealed, and we reversed, finding that the district court applied the wrong standard under the *McDonnell Douglas* burden-shifting framework, and that summary judgment was improper because Corti produced sufficient evidence of pretext to place a material fact in dispute. *Corti v. Storage Technology Corp.*, 199 F.3d 1326 (4th Cir. 1999) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The case proceeded to jury trial in January of 2001. At the close of Corti's case, StorageTek moved for judgment pursuant to Rule 50(a), asserting that Corti had not presented a legally sufficient evidentiary basis on which to find in her favor. The court denied the

---

[4]The performance evaluations were allegedly based on objective standards (quota attainment), as well as on more subjective standards, such as communication skills.

[5]Corti presented substantial evidence of other discriminatory acts by Silk, Mikkelsen and Hartman. StorageTek conceded that Silk and Mikkelsen were decision-makers in the removal of Corti from her FSM position. The question of whether Hartman was also a decision-maker was left to the jury.

motion. StorageTek renewed its motion at the close of all the evidence, and the court again denied the motion.

The jury returned a verdict in favor of Corti, awarding her $0 compensatory damages and $100,000 in punitive damages. After briefing and further argument, the district judge issued a judgment order, which included the jury's verdict and an award of $410,974.63 in back pay and prejudgment interest. StorageTek moved to alter or amend the judgment pursuant to Rule 59(e), challenging the district court's calculation of back pay and interest. On May 23, 2001, the district court issued an order denying StorageTek's motion. StorageTek timely noted its appeal.

## II.

StorageTek argues that the court erred in denying its Rule 50(a) motion for judgment as a matter of law. It does not dispute that Corti established a prima facie case for gender discrimination.[6] Rather, it asserts that Corti did not "present evidence that StorageTek's stated reason for the RIF [reduction in force] (to downsize and eliminate a layer of management) was false and that the real reason was her gender." StorageTek misstates Corti's burden. Corti was not required to

---

[6]To establish a prima facie case for gender discrimination in a reduction in force (RIF) context, a plaintiff must show that 1) she was protected under Title VII, 2) she was selected from a larger group of candidates, 3) she was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). Even though Mikkelsen, a male, was moved into a FSM position when his regional FSM position was eliminated, seemingly replacing Corti, this is nevertheless a force reduction case. Thus, rather than showing that she was replaced by a man, Corti was required to demonstrate that persons outside the protected class "were retained in the same position or that there was some other evidence that the employer did not treat [gender] neutrally" in deciding to demote her over one of the other two male FSMs. *Tuck v. Henkel Corp.*, 973 F.2d 371, 375, n.3 (4th Cir. 1992) (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988)).

show that StorageTek's reason for eliminating a layer of management was a pretext, she was required to show that the excuse given for choosing her for a demotion (her performance) was a pretext for discrimination.[7] *See Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 557 (7th Cir. 2001) (explaining that "even if a reduction in force is otherwise legitimate (i.e. not simply an excuse to terminate [female] workers), a plaintiff may establish pretext by showing that the specific reasons given for including [her] in the reduction were pretextual.").

A district court should grant a motion for judgment as a matter of law during a jury trial "if a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). Judgment as a matter of law is only appropriate if, viewing the evidence in the light most favorable to the non-moving party, the court concludes that "a reasonable trier of fact could draw only one conclusion from the evidence." *Brown v. CSX Transportation, Inc.*, 18 F.3d 245, 248 (4th Cir. 1994). When reviewing a district court's denial of a Rule 50(a) motion, this court applies the same standards *de novo*. *Id.*

The evidence here demonstrated that Corti was a top producer as a FSM, and that she consistently outperformed the two male FSMs who retained their positions. Corti's superiors knew she would be one of the most profitable FSMs nationwide in 1995. Though a company may base its decision to demote an employee on a number of factors, the employee evaluations that were allegedly used by Silk in his decision to demote Corti were based in part on the subjective input of two

---

[7]Under the *McDonnell Douglas* framework, once the plaintiff establishes a prima facie case of discrimination, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory reason. *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993)). If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's articulated reason was a pretext for unlawful discrimination. *Id.* Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

managers who were shown to have problems with women.[8] In the light most favorable to Corti, the evidence established that Storage-Tek's proffered reason for her demotion was "unworthy of credence," *see Burdine*, 450 U.S. at 256, and therefore a pretext for discrimination. Accordingly, the district court properly denied StorageTek's motion for judgment as a matter of law.

## III.

StorageTek further contends that error occurred here because the jury awarded Corti $100,000 in punitive damages, but it awarded her no compensatory damages. It asserts that compensatory damages are required to support a punitive damage award in Title VII cases, and the jury failed to follow the district court's punitive damages instruction. Because StorageTek failed to raise these issues before the trial court, we review the allegations of error for plain error only. *Taylor v. Virginia Union University*, 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (citing *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex)*, 124 F.3d 619, 630-31 (4th Cir. 1997)). Before we can exercise our discretion to correct an error not raised below in a civil case, at a minimum, the requirements of *United States v. Olano*, 507 U.S. 725 (1993), must be satisfied. *Id.* at 239-40. Thus, under *Olano*, Storage-Tek must show that 1) there is an error, 2) the error is plain, 3) the error affects substantial rights, and 4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Olano*, 507 U.S. at 730. Here, because we find no error, StorageTek cannot meet even the first prong of the *Olano* test.

The issue of whether punitive damages can be awarded in the absence of any actual damages in a Title VII case is one of first impression in this circuit. Because we are satisfied that the evidence at trial was sufficient to support the punitive damages award[9] and

---

[8]*See ante*, 3-4, n.5; *see, e.g.*, *Corti I*, 199 F.3d 1326 (describing deposition testimony substantially similar to witness testimony later admitted at trial).

[9]Before the Civil Rights Act of 1991, punitive damages were unavailable under Title VII. As part of the 1991 enactments, Congress added a provision allowing Title VII plaintiffs to recover punitive damages when

because the district court awarded Corti back pay based on the jury's finding of liability, we find no error in allowing the punitive damages award to stand.[10]

Our holding is in accord with opinions of the First, Seventh and Eleventh Circuits. *See Provencher v. CVS Pharmacy*, 145 F.3d 5, 11 (1st Cir. 1998); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995); *EEOC v. W&O, Inc.*, 213 F.3d 600, 615 (11th Cir. 2000). These circuits have recognized, as we do, that nothing in the plain language of § 1981a conditions an award of punitive damages on an underlying award of compensatory damages. *Hennessy*, 69 F.3d at 1352.

StorageTek relies heavily on this court's decision in *People Helpers Found., Inc. v. Richmond*, 12 F.3d 1321 (4th Cir. 1993), where we held that punitive damages are not recoverable under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, when compensatory damages have not been awarded. In *People Finders*, the panel noted that a majority of the states prohibit punitive damages when a fact finder fails to award compensatory damages. *Id.* at 1327. It explained that the reasoning supporting this majority rule is "the belief that punitive damages are not appropriate in cases where a plaintiff has failed to demonstrate actionable harm." *Id.* (citing James A. Ghiardi & John J. Kircher, *Punitive Damages: Law and Practice*, § 5.37 (1985 and Supp. 1993)).

---

it is shown that the defendant employer engaged in intentional discrimination with "malice or with reckless indifference to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1); *Anderson v. G.D.C. Inc.*, 281 F.3d 452, 459 (4th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)).

[10]The district judge instructed the jury that if it determined punitive damages were appropriate, in fixing the amount, it "should consider the following questions: How offensive was the conduct? What amount is needed considering the defendant's financial condition to prevent future repetition? Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?" J.A. 768. We do not read this instruction as a specific command to the jury that it could not award punitive damages without first awarding actual damages. Thus, we do not accept StorageTek's contention that the jury did not follow the district court's instruction.

We stated that "to hold otherwise would create a windfall by allowing the recovery of damages when no actionable harm has been suffered." *Id.* The crucial difference between *People Helpers* and the case at hand is that *People Helpers* involved a suit under the Fair Housing Act, which, unlike Title VII, does not contain a provision for an award of back pay.[11] We find that a loss of income due to discrimination amounts to "actionable harm."

Title VII's back pay remedy is "a 'make-whole' remedy that resembles compensatory damages in some respects." *Landgraf v. USI Film Products*, 511 U.S. 244, 253 (1994); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-22 (1975). While the jury awarded Corti no compensatory damages, after the jury found StorageTek liable for unlawful discrimination, the district court awarded Corti over $410,000 in back pay and interest. J.A. 1046.

Unlike compensatory damages at common law, compensatory damages under § 1981a are defined to omit back pay, which is "the most obvious economic damage in a wrongful discharge case." *Hennessy*, 69 F.3d at 1352. The omission occurs under the 1991 Act to prevent double recovery. *See Landgraf*, 511 U.S. at 253. For this reason, the court instructed the jury that "[i]n calculating damages, you may not consider any wages or benefits that Ms. Corti may have lost. The award of lost pay or benefits should you find StorageTek liable, will be determined by the Court." J.A. 767. We believe that the award of back pay clearly establishes that Corti suffered injury.[12] Because back pay awards serve a similar purpose as compensatory damage awards, the "familiar tort mantra" that punitive damages may not be assessed in the absence of compensatory damages will not aid StorageTek in this case. *See Hennessy*, 69 F.3d at 1352.[13] In Title VII

---

[11]A prevailing plaintiff in a Title VII case is entitled to back pay. *See* 42 U.S.C. § 2000e-5(g).

[12]StorageTek has not offered, nor can we find, any reason to disallow punitive damages merely because the court, not the jury, is responsible for awarding back pay under the statutory scheme.

[13]After *Hennessy*, the Seventh Circuit went further, holding that a punitive damage award survives even without an award of back pay. *See Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998); *see also Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 357 (2d Cir. 2001). Because back pay was awarded in the case at hand, we need not reach this question today.

cases, a jury's punitive damage award will stand even in the absence of compensatory damages if back pay has been awarded.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

NIEMEYER, Circuit Judge, concurring:

I write separately to clarify what, I conclude, we hold in Part III and to explain my support of the judgment reached there.

With respect to the standard of review, it remains the law of this circuit that when a party to a civil action fails to raise a point at trial, that party waives review of the issue unless there are exceptional or extraordinary circumstances justifying review. *See Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 239 (4th Cir. 1999) (holding that insurance company's failure to raise specific interpretation of contract at trial resulted in a waiver of its argument on appeal); *United States v. Vanhorn*, 20 F.3d 104, 114 (4th Cir. 1994) (finding that physician had waived her argument that she was entitled to partial credit for her service under the National Health Service Corps program because she "did not raise this issue before the agency or the court below, and has not pointed to any exceptional circumstances justifying our consideration of it now"); *Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 215 (4th Cir. 1982) ("In the absence of exceptional circumstances, questions not raised and properly preserved in the trial forum will not be noticed on appeal"); *Malbon v. Pa. Millers Mut. Ins. Co.*, 636 F.2d 936, 940-41 (4th Cir. 1980) (explaining reasons for requiring parties to raise all arguments at trial and concluding that "[i]t is elementary that an issue not raised below will not, absent extraordinary circumstances, . . . be considered on appeal"). When a case meets the necessary criterion of exceptionality or extraordinariness, then we may notice the error and analyze it under the plain-error standard that we apply in the opinion for the court. The court's opinion fails, however, to address this necessary

prerequisite for our consideration of an issue that was not raised below. While the issue in this case may well be a candidate to meet the exceptionality or extraordinariness criterion, the fact that the court's opinion does not explicitly address it cannot be construed as overruling precedent set by a prior panel of this court. Only an *en banc* decision could do that. *See Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001); *Bell v. Jarvis*, 236 F.3d 149, 159 (4th Cir. 2000) (en banc).

On the substance of the punitive-damages issue, I write separately to clarify our holding that punitive damages are appropriate in this Title VII case because they accompany an award of lost wages. Such a holding is in accordance with the common-law rule, to which we continue to adhere in Title VII cases, that punitive damages are not appropriate unless they accompany compensatory damages.

In this case, the jury awarded Corti $100,000 in punitive damages, but no compensatory damages. The court, however, awarded Corti more than $410,000 in backpay and interest. StorageTek argues that Corti is not entitled to the punitive damages award because the jury did not award her compensatory damages. This argument rests on the general rule that punitive damages are prohibited in the absence of compensatory damages. *See, e.g.*, *People Helpers Found., Inc. v. Richmond*, 12 F.3d 1321, 1327 (4th Cir. 1993); *Provencher v. CVS Pharmacy*, 145 F.3d 5, 11 (1st Cir. 1998). While the rule is an established one, StorageTek's argument fails in application. Our holding that Corti may receive punitive damages is grounded on the fact that the district court awarded her lost wages, and we do not violate the general rule that punitive damages must be supported by compensatory damages in so holding.

Title VII authorizes punitive damages when a defendant discriminates against the plaintiff "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). That provision does not address, one way or the other, whether the common-law rule — that compensatory damages must be proved as a condition to an award of punitive damages — applies. Section 1981a does, however, remove from the jury's consideration of compensatory damages any award for "backpay." *See* 42 U.S.C. § 1981a(b)(2). This provision was necessary to avoid double

recovery for backpay because 42 U.S.C. § 2000e-5(g)(1) already provided for backpay. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 253 (1994); *Provencher*, 145 U.S. at 11; *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995). Thus, under the scheme established under Title VII, the court awards backpay, and the jury awards other compensatory damages. The fact that the statute separates these factfinding responsibilities does not suggest that Congress abolished the general requirement that some form of compensatory damages be awarded before punitive damages be awarded.

Indeed, backpay awards are compensatory in nature and are, in fact, "the most obvious economic damages in a wrongful discharge case." *Hennessy*, 69 F.3d at 1352; *see also Landgraf*, 511 U.S. at 253 (recognizing that backpay "is a 'make-whole' remedy that resembles compensatory damages in some respects"). In this case, Corti was not awarded compensatory damages as those damages are defined in § 1981a, but she was awarded damages to compensate her for the loss of income resulting from her employer's discriminatory tactics. Because Corti received a backpay award compensating her for her lost wages, she received "compensatory damages" and thereby became authorized to receive punitive damages in the circumstances prescribed by Title VII.

With these modest clarifications, I am pleased to concur.