UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SELINDA SIMMONS,

*Plaintiff-Appellee,*

v.

NEIL P. O'MALLEY, M.D.;
NEUROSURGICAL & SPINAL SURGERY,
d/b/a Neurosurgical & Spinal
Surgery Specialists,

*Defendants-Appellants,*

and

MEHRULLAH KAHN, M.D.; ANTIETAM
NEUROLOGY CENTER, P.A.,

*Defendants.*

No. 03-1039

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-99-3217-CCA)

Argued: December 4, 2003

Decided: January 6, 2004

Before WILKINSON and DUNCAN, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Frederick William Goundry, III, VARNER & GOUN-
DRY, P.C., Frederick, Maryland, for Appellants. Elijah Dale Adkins,

III, SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, L.L.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** Conrad W. Varner, J. Matthew Gilmore, VARNER & GOUNDRY, P.C., Frederick, Maryland, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This is a medical malpractice action founded upon our diversity jurisdiction and brought under Maryland law. Selinda Simmons filed this action against Dr. Neil O'Malley and various other defendants seeking damages as a result of the defendants' alleged negligence in the treatment and care of her medical condition. A jury returned a verdict in favor of Simmons and awarded her $612,000 in damages. The defendants appeal from an order of the district court denying their motion for judgment as a matter of law. We affirm.

I.

A. *Factual Background*

In reviewing the denial of a motion for judgment as a matter of law, we must view the evidence in the light most favorable to Simmons, the nonmovant. *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 331 (4th Cir. 2003). Accordingly, we recite the evidence presented at trial in this light, noting the relevant conflicts.

On August 9, 1996, Simmons visited the office of Dr. O'Malley, a neurosurgeon in Hagerstown, Maryland. At this time, Simmons was diagnosed as possibly suffering from pseudotumor cerebri, a neurological disorder characterized by increased intracranial pressure, swelling of the optic nerve (or "papilledema"), and, in some cases,

vision loss. (J.A. at 63-64). After conducting an examination and reviewing Simmons' medical history, Dr. O'Malley recommended that Simmons undergo a spinal tap (or "lumbar puncture") to examine her spinal fluid pressure. Dr. O'Malley further recommended that Simmons receive an eye (or "ophthalmologic") exam to test for papilledema. If increased spinal fluid pressure and papilledema are not present, it is unlikely that pseudotumor cerebri exists, and there is no evidence that it is active. Dr. O'Malley prescribed Decadron, a corticosteroid used to decrease pressure in the brain, and instructed Simmons to take two milligrams of Decadron four times a day "for the next few weeks." (J.A. at 550).

Simmons had a lumbar puncture on August 15, 1996, and the results of this procedure revealed no signs of abnormal spinal fluid or intracranial pressure. (J.A. at 111). On August 20, 1996, Simmons had an ophthalmological exam, which confirmed that "her vision was good" and that she exhibited no signs of papilledema. (J.A. at 112, 120). In the meantime, however, Simmons continued to take the prescribed dosage of Decadron, and was not seen again by Dr. O'Malley until September 12, 1996. Dr. O'Malley's notes of the September visit suggest that he reduced the Decadron prescription "just slightly" after this visit. (J.A. at 138). At trial, however, Simmons put on evidence tending to show that, at all times relevant to these proceedings, her steroid prescription remained the same.

Dr. O'Malley saw Simmons again on November 5, 1996, at which time he noted that her symptoms appeared to be worsening. Dr. O'Malley concluded that Simmons had exhausted all conservative treatments for her medical condition and decided to refer Simmons to a specialist at the Johns Hopkins Hospital in Baltimore, Maryland in order to evaluate her surgery options. Simmons thereafter saw Dr. John Weingart, a neurosurgeon at Johns Hopkins, on November 18, 1996. Her mother testified at trial that Simmons was still on the steroid Decadron at the same dose that Dr. O'Malley had prescribed in September. (J.A. at 557). Dr. Wiengart examined Simmons and concluded that it did not appear to him that she actually had pseudotumor cerebri. (J.A. at 330). Dr. Weingart noted, however, that Simmons had "many complications related to her steroids which need[ed] to be sorted out." (*Id.*).

Specifically, since her last visit with Dr. O'Malley on November 5, 1996, Simmons had developed severe stretching of the skin ("striae"), large breaks in the skin, areas of bleeding and infection, a large seeping blister on her chest, hair loss, and truncal obesity. Simmons had also started to show signs of Cushing's Syndrome, a disorder characterized by excessive fat deposits in the face and on the back of the neck. Immediately after her visit with Dr. Weingart, Simmons was sent to the emergency room. She was admitted to the hospital and remained there for the next four days while her steroid intake was "tapered" or gradually reduced.

## B.  *Trial Court Proceedings*

On October 22, 1999, Simmons filed a complaint in the U.S. District Court for the District of Maryland against Dr. O'Malley and several other defendants, alleging that the defendants were negligent in (1) placing her on an inappropriate steroid therapy, (2) continuing this therapy for a prolonged period of time, and (3) failing to properly monitor her condition in light of the potency of the drug and the high risk of side effects. Simmons further alleged that her injuries were the direct and proximate result of the defendants' negligence in treating her medical condition.

The case was tried to a jury, and at the close of Simmons' evidence, the defendants moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The trial court denied this motion on the grounds that Simmons had presented sufficient evidence on the issues of negligence, causation, and damages to submit the case to the jury. (J.A. at 563). The defendants renewed this motion at the close of all the evidence. The trial court once again denied the defendants' motion and submitted the case to the jury, which returned a verdict in Simmons' favor and awarded her $612,000 in damages. The defendants thereafter filed a post-trial motion for judgment as a matter of law and moved, in the alternative, for a judgment of remittitur and for a new trial. The trial court denied these motions, and the defendants filed the instant appeal.

## II.

We review the denial of the defendants' motion for judgment as a matter of law *de novo. Corti v. Storage Tech. Corp.*, 304 F.3d 336,

341 (4th Cir. 2002). Under Rule 50, judgment as a matter of law is appropriate only where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]" Fed. R. Civ. P. 50(a)(1). In determining whether the evidence in this case is sufficient to support the jury's verdict, we view the evidence in the light most favorable to Simmons, giving her the benefit of all reasonable inferences. "If, with that evidence, a reasonable jury could return a verdict in favor of [Simmons], the court must defer to the judgment of the jury, even if the court's judgment on the evidence differs." *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1417 (4th Cir. 1991).

In order to prevail in her medical malpractice action against the defendants, Maryland law required Simmons to establish (1) the applicable standard of care, (2) that the defendants breached this standard, and (3) that her injuries were caused by the defendants' breach. *See Weimer v. Hetrick*, 309 Md. 536, 547, 525 A.2d 643, 648-49 (1987). In addition, Maryland law required Simmons to prove both negligence and causation by expert testimony. *Meda v. Brown*, 318 Md. 418, 428, 569 A.2d 202, 207 (1990).

On appeal, the defendants advance two arguments that the denial of their motion for judgment as a matter of law was reversible error. The defendants first argue that Simmons failed to establish the causation element of her claim. We disagree. Simmons offered the testimony of three experts, each of whom testified that the unnecessarily prolonged course of steroids prescribed by Dr. O'Malley caused her injuries. The defendants acknowledge this evidence, but nevertheless argue that causation was not established in this case because no witness testified as to whether a faster "taper" would have prevented the injuries Simmons sustained.

This argument is without merit. Simmons' experts all testified that after the spinal tap and ophthalmological exam revealed no signs of pseudotumor cerebri, the Decadron treatment should have been tapered and discontinued within one or two weeks in order to avoid the serious side effects Simmons experienced. (J.A. at 120-21, 136-37, 319, 376-77). Dr. Deborah Friedman testified that Simmons' truncal obesity, skin breakdown, hair loss, and capillary fragility were all attributable to the prolonged used of steroids. Dr. Friedman testified

that the greater the dosage of steroids, the more likely a patient is to experience these side effects and the sooner they will occur.

Further, the testimonial and documentary evidence, when viewed in the light most favorable to Simmons, tended to show that Dr. O'Malley *never* tapered the dosage of Decadron Simmons received. (J.A. at 241, 557). Accordingly, there was sufficient evidence of causation to support the jury's verdict, and the defendants were not entitled to judgment as a matter of law.

The defendants next argue that the trial court erroneously permitted Simmons to call expert witnesses who were not qualified to testify as to the applicable standard of care for a neurosurgeon. Specifically, the defendants contend that because Dr. Friedman and Dr. Grant Liu were neurologists rather than neurosurgeons, the district court erred in permitting them to testify concerning the standard of care for neurosurgeons treating pseudotumor cerebri. Under Maryland law, "the admissibility of expert testimony is a matter largely within the discretion of the trial court and its action will seldom constitute a ground for reversal." *Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472, 476 (1977).

We see no basis for reversing the judgment of the district court on this issue. It was evident from their testimony that both Dr. Friedman and Dr. Liu were experienced neurologists well-acquainted with the symptoms and methods for treating pseudotumor cerebri. Neurology involves both the diagnosis and treatment of neurological disorders, including pseudotumor cerebri. (J.A. at 2781). In addition, Dr. Friedman testified that, at least with regard to the treatment of the disorder with corticosteroids, the standard of care for neurosurgeons was no different than that for neurologists. Thus, we find no abuse of discretion in the district court's permitting these witnesses to testify as to the applicable standard of care in this case.

### III.

We conclude that Simmons presented sufficient evidence of negligence and causation to submit her medical malpractice action to the jury, and that the district court did not abuse its discretion in permitting Dr. Friedman and Dr. Liu to testify as to the applicable standard

of care. Accordingly, we affirm the judgment and order of the district court in all respects.

*AFFIRMED*