**Kathleen GARROW, Plaintiff,**

v.

**ECONOMOS PROPERTIES, INC., Defendant.**

**No. CIV.A. 4:04CV67.**

United States District Court,
E.D. Virginia,
Newport News Division.

Dec. 22, 2005.

Ann Katherine Sullivan, Crenshaw Ware & Martin PLC, Norfolk, VA, for Plaintiff.

David Christopher Burton, Williams Mullen, Virginia Beach, VA, for Defendant.

## OPINION AND ORDER

KELLEY, District Judge.

Plaintiff Kathleen Garrow ("Garrow") was terminated as an employee of the Omni Hotel (the "Hotel") located in Newport News, Virginia. She subsequently filed this action, alleging that the elimination of her job as a cost reduction measure violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(c) *et seq.* (Title VII). The matter is now before the Court on defendant's Motion for Summary Judgment. (Docket No. 17.) For the reasons stated below, the Motion is **GRANTED.**

### I.   Factual and Procedural History [1]

Nicholas Economos ("Nick") is the principal owner of Economos Properties, Inc. ("Properties, Inc."), which owns the Hotel. His brother, Dennis Economos ("Dennis") is also a part owner of Properties, Inc. Garrow served as the Hotel's Director of Sales.

In December 2002, Garrow asked Nick to promote her to a general manager position at one of Properties, Inc.'s Florida hotels. Garrow sought the promotion because her husband had received a job offer in Ft. Lauderdale. Nick told Garrow that she was not qualified to be a general manager, but with some experience she could serve as assistant general manager at a hotel in Florida. Nick decided that Garrow would "shadow" Lee Severino ("Severino"), General Manager of the Hotel, to learn hotel operations. At some point, Nick and Garrow discussed the possibility of Cheryl Johnson ("Johnson") replacing Garrow as the Hotel's Director of Sales.

Though the position had not previously existed, Garrow became Assistant General Manager of the Hotel. She also maintained her responsibilities as Director of Sales. New business cards were ordered that identified Garrow as "Assistant General Manager." Garrow told her husband

---

1. In deciding Properties, Inc.'s Motion for Summary Judgment, the Court must view the facts, and the inferences reasonably drawn from those facts, in the light most favorable to Garrow. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Smith v. Cont'l Cas. Co.,* 369 F.3d 412, 417 (4th Cir. 2004); *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995).

to accept the job offer in Florida, and advised her co-workers that she would move to Florida to join her husband at the end of her children's school year.

Shortly after promoting Garrow, Nick became concerned about the Hotel's financial situation. Income was down and expenses were over budget. In addition, the Hotel was undergoing an expensive renovation. The war in Iraq was looming, and Nick recalled that Operation Desert Storm in 1991 had caused financial problems for the Hotel.

Nick discussed the Hotel's financial problems and possible solutions with Dennis, General Manager Severino, and with Ms. P.J. Hamada ("Ms.Hamada"), the Hotel's Controller. After the January 2003 financial report showed below budget performance for the third straight month, Nick decided to take action. He directed Dennis to reduce renovation expenditures and perform what work he could in-house, without contractors. Nick also decided to lower the Hotel's personnel count, which had increased by two positions in 2002. Among other things, both Nick and Dennis felt it unwise to retain Garrow, as she was in a training position and was leaving the Hotel in a few months.

On February 14, 2003, Nick acted to reduce payroll. During a conference call with Dennis, Severino and Ms. Hamada, Nick reduced Severino's salary by $20,000 (to $55,000) and cancelled Severino's anticipated bonus for 2002. Nick also eliminated Garrow's position and reduced the pay of Hotel employees Leah Henretta, Brian Boger, Eureka Monique, Paula Boyd and Cathy Crowder. Finally, Nick directed Ms. Hamada to eliminate an accounting position.

Shortly after the conference call, Severino implemented Nick's directive to terminate Garrow's employment. Severino also informed Cathy Crowder and Leah Henretta that their pay was being reduced. Ms. Crowder immediately resigned. There is conflicting testimony as to whether Ms. Henretta was terminated or resigned. The Hotel has not had an Assistant General Manager since Garrow's termination.

Nick's cost cutting moves devastated morale among the Hotel's staff. After several days of unrest, Dennis and Ms. Hamada approached Nick and recommended he reconsider his February 14 personnel decisions. Nick acquiesced, and suspended the personnel changes that had not yet been implemented. Additionally, after Dennis informed Nick that Severino would resign if his salary was reduced, Nick reinstated Severino's full salary, but did not reinstate his bonus.[2]

Nick's change of strategy apparently worked. Cheryl Johnson filled Garrow's former position as Director of Sales, receiving both the title and an official promotion on April 1. Brian Boger was eventually promoted to Leah Henretta's former position. In 2004, Mr. Boger became general manager of one of Nick's Florida hotels. Paula Boyd and Eureka Monique also stayed in their positions as sales managers.

**2.** Severino had already received anywhere from $3,000 to $9,000 of his expected $25,000 bonus for 2002 prior to the February 14 conference call. The remainder of his bonus was never paid. For calendar year 2003, Severino received a year-end bonus of $50,000. Nick testified that the "additional" bonus amount was to compensate Severino for his increased workload due to the Hotel's in-house renovation work. Plaintiff speculates that the 2003 bonus was really a secret preference given to a male employee. The issue is irrelevant to the Court's decision because there is no evidence that Severino's 2003 bonus was even discussed at the time Nick decided to eliminate Garrow's position.

After receiving a right to sue letter from the EEOC, Garrow filed this action on June 2, 2004. To prove her claim of gender discrimination, Garrow cites her undisputed exemplary performance as Director of Sales, recounts alleged discriminatory statements made by Severino and alleges that Severino was instrumental in the decision to terminate her. Garrow further claims that only female employees were harmed by Nick's cost cutting decisions while male employees were given preferential treatment.

## II. Principles of Summary Judgment

The standards courts apply in their consideration of motions for summary judgment are well-established. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Seabulk Offshore, Ltd. v. American Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir.2004); *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 449 (4th Cir.2004).

An otherwise proper summary judgment motion will not be defeated by a mere factual dispute between the parties unless the dispute concerns a "genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Bouchat v. Baltimore Ravens Football Club*, Inc., 346 F.3d 514, 519 (4th Cir.2003). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001); *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 209 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Commerce Funding Corp.*, 249 F.3d at 209–10; *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir. 1999).

Summary judgment shall be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Hooven–Lewis*, 249 F.3d at 265; *Johnson v. Pearson*, 316 F.Supp.2d 307, 313 (E.D.Va.2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir.2004); *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 718 (4th Cir.2003); *see Celotex Corp.*, 477 U.S. at 322–25, 106 S.Ct. 2548. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine is-

sue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Honor*, 383 F.3d at 185; *McLean*, 332 F.3d at 718–19.

In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answers to interrogatories, and admissions on file to establish a genuine issue of material fact. *Celotex Corp.*, 477 U, 106 S.Ct. 2548.S. at 324; *see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir.1993); *Parker v. Westat, Inc.*, 301 F.Supp.2d 537, 540 (E.D.Va.2004). However, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir.1997); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F.Supp.2d 668, 671 (E.D.Va.2004). The evidence presented must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir.2004); *Tao of Sys. Integration, Inc.*, 330 F.Supp.2d at 671.

■ Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548; *Sibley v. Lutheran Hosp. of Md., Inc.*, 871 F.2d 479, 483 n. 9 (4th Cir.1989); *Brown v. Mitchell*, 327 F.Supp.2d 615, 628 (E.D.Va.2004). Rather, the summary judgment procedure is properly regarded as an "integral part" of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter. *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548; *Sibley*, 871 F.2d at 483 n. 9; *Graham v. PACTIV Corp. Benefits Comm.*, 301 F.Supp.2d 483, 491–92 (E.D.Va.2004).

■ A court "must take special care" when considering a summary judgment motion in an employment discrimination case because the employer's "motive is often the critical issue." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir.1996); *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir.1987). Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his or her discrimination claims as a matter of law. *Beall*, 130 F.3d at 619; *Evans*, 80 F.3d at 958–59.

### III. Analysis

A plaintiff proceeding under Title VII of the Civil Rights Act of 1964 may prove his or her case in one of two ways. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir.2005); *Hill*, 354 F.3d at 284; *Equal Employment Opportunity Comm'n v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir.1992); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 847–48 (4th Cir.1988). First, he or she may establish a claim for discrimination "under the ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue." *Clay Printing Co.*, 955 F.2d at 940; *see also Diamond*, 416 F.3d at 318; *Hill*, 354 F.3d at 284; *Goldberg*, 836 F.2d at 847. Alternatively, he or she may proceed under the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). *See Diamond,* 416 F.3d at 318; *Hill,* 354 F.3d at 285; *Clay Printing Co.,* 955 F.2d at 940; *Goldberg,* 836 F.2d at 847.

### A. Plaintiff's Prima Facie Case

 Plaintiff Garrow has elected to proceed under the *McDonnell Douglas* pretext framework. The Supreme Court created this framework "to give plaintiffs who lack direct evidence a method for raising an inference of discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 818, 93 S.Ct. 1817; *see Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Costa v. Desert Palace,* 299 F.3d 838, 855 (9th Cir. 2002). Even under this test, the plaintiff still must "prove a set of circumstantial facts which, in the absence of a legitimate non-discriminatory explanation, leads one to conclude with reasonable probability that the adverse employment action was a product of ... discrimination." *Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1418 (4th Cir.1991).

 Under the *McDonnell Douglas* framework, a plaintiff asserting a claim under Title VII has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Raytheon Co. v. Hernandez,* 540 U.S. 44, 50, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Mackey v. Shalala,* 360 F.3d 463, 468 (4th Cir.2004). To establish a *prima facie* case plaintiff Garrow must show that: 1) she is a member of a protected class; 2) she suffered an "adverse employment action"; 3) her performance met the employer's legitimate expectations at the time of the adverse employment action; and 4) the position in question either remained open or "was filled by [a] similarly qualified [individual] outside the protected class." *Hill,* 354 F.3d at 285; *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Brinkley,* 180 F.3d at 607. Garrow cannot establish the fourth element of this test.

 The position Garrow held at the Hotel at the time of her termination—Assistant General Manager—was created solely to accommodate her and then subsequently eliminated. It did not exist prior to her assuming it, and it has not been resurrected since its elimination. A position that does not exist can neither remain open, nor be filled by anyone (even a disfavored male). Nor can plaintiff Garrow satisfy the fourth element by claiming her actual position was that of Director of Sales. Plaintiff was replaced as Director of Sales by Cheryl Johnson, a member of Garrow's protected class. It is not discrimination to replace a member of a protected class with another member of the same protected class.[3]

Plaintiff contends that this is really a reduction in force case that is governed by the test articulated in *Corti v. Storage Tech. Corp.,* 304 F.3d 336, 341 (4th Cir. 2002). The *Corti* test, however, applies to reduction in force cases where employee performance is the basis for selection. *See Andrezyski v. Kmart Corp.,* 358 F.Supp.2d

---

**3.** Plaintiff alleges the fact that Ms. Johnson did not receive the official title of and promotion to Director of Sales until after the EEOC had begun their investigation is evidence of discrimination. This is of no help in establishing a *prima facie* case that Nick acted with discriminatory animus when he made the cost cutting decisions on February 14, 2002. The fact remains that Garrow's position neither remained open nor was filled by a man. Moreover, the record shows that Ms. Johnson assumed the duties (if not the title) of Director of Sales immediately after Garrow's dismissal.

511, 515 (W.D.Va.2005). In the instant case, there is no evidence in the record to suggest that employee performance was even a consideration in Nick's cost cutting decisions. To the contrary, the record unequivocally reveals that Nick's decisions were based solely on the Hotel's personnel needs and employee compensation without reference to employee performance. The test in *Corti*, therefore, is inapplicable here. If the elimination of a single position is to be tested as a reduction in force, the applicable standard is the one articulated in *Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 720–21 (4th Cir.2002). In *Dugan*, the Fourth Circuit held that the fourth element of plaintiff's *prima facie* case is modified such that the plaintiff must prove that the employer "did not treat the protected status neutrally, or [that] there were other circumstances giving rise to an inference of discrimination." *Id.* at 720–721. The court noted that "[w]hat is critical with respect to the fourth element is that the plaintiff demonstrate he was [terminated] 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 721 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The record is devoid of any evidence that Garrow's sex was even a consideration in the decision to eliminate the position created solely to accommodate her. Nick testified without contradiction that Garrow's termination was part of a list of payroll reduction actions that would adversely affect both men and women. Garrow's position was eliminated as unnecessary, while the pay of both men and women would be reduced. Similarly, once Dennis prevailed upon his brother to reverse certain decisions, both men and women were spared the adverse effects of the payroll reduction: Severino, Boger,

Boyd and Monique escaped the planned base pay cuts.

■ To conjure a discriminatory basis for her termination, plaintiff contends that Severino, not Nick, made the decision to terminate her. Garrow further claims that Severino's decision was based on his alleged lack of respect for women. Even assuming the latter assertion to be true, Garrow still cannot prevail. There is no evidence that Severino made the decision to terminate Garrow. The record shows that the decision to eliminate Garrow's position was made solely by Nick, following discussions he had with his partner and brother, Dennis. In addition, there is no evidence that Severino even made a recommendation to Nick, although plaintiff asks the Court to make such an inference.

The liability of an employer in this situation is governed by the Fourth Circuit's decision in *Hill v. Lockheed Martin Logistics Mgt.*, 354 F.3d 277 (4th Cir.2004). The Fourth Circuit held in *Lockheed Martin* that "an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." *Id.* at 291. Plaintiff has failed to produce any evidence to show that Severino was "principally responsible for the decision or the actual decisionmaker for the employer." *Id.* To the contrary, the record shows that Nick, and Nick alone, made the decision to terminate Garrow. As Severino was not involved in the decision to terminate Garrow, his alleged bias is insufficient as a matter of law to establish an inference of discrimination actionable under Title VII.

That Severino implemented Nick's cost cutting decisions by starting with Garrow's position does not create the inference that Nick harbored discriminatory intent when he made his February 14, 2003 decisions. The full salvo of personnel actions adverse-

ly affecting both men and women would have occurred had Dennis not persuaded his brother to suspend those cost cutting decisions not already implemented. Contrary to plaintiff's assertions, the law does not require an employer to take a Noah's ark approach to reductions in force, *i.e.*, maintaining absolute gender parity even if it means randomly firing a man so that he can be marched out the door in tandem with a woman whose job was legitimately deemed non-essential. *See Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) ("Congress expressly provided that Title VII not be read to require preferential treatment or numerical quotas."). Nor is the Court to act as a "super-personnel department that reexamines an entity's business decisions." *Beall v. Abbott Labs.,* 130 F.3d 614, 620 (4th Cir.1997). "[A]n unlawfully discriminatory motive" is the issue in a Title VII case, "not the wisdom or folly of [an employer's] business judgment." *Id.* (quoting *Jiminez v. Mary Washington Coll.,* 57 F.3d 369, 383 (4th Cir.1995)).

### V. Conclusion

For the reasons stated above, defendant's Motion for Summary Judgment is **GRANTED.**

The Clerk is hereby **DIRECTED** to forward a copy of this Order and Opinion to all counsel of record.

**IT IS SO ORDERED.**