PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LINDA J. DUGAN,
            *Plaintiff-Appellant,*

v.

ALBEMARLE COUNTY SCHOOL BOARD,
            *Defendant-Appellee.*

⎱
⎰  No. 01-1935

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-99-35-3)

Argued: May 8, 2002

Decided: June 17, 2002

Before NIEMEYER and MOTZ, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by published opinion. Senior Judge Beam wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Dexter Brock Green, JONES & GREEN, L.L.P., Charlottesville, Virginia, for Appellant. John Lester Cooley, Jr., WOOTEN & HART, P.C., Roanoke, Virginia, for Appellee. **ON BRIEF:** John Mark Cooley, WOOTEN & HART, P.C., Roanoke, Virginia, for Appellee.

**OPINION**

BEAM, Senior Circuit Judge:

Linda Dugan, a fifty-three-year-old white female physical education (PE) teacher, claims that the Albemarle County School Board subjected her to invidious discrimination in violation of 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a et seq. (Title VII) and 29 U.S.C. § 621 et seq. (ADEA). For the reasons that follow, we disagree.

I.

In the spring of 1998, plaintiff Dugan was employed at Cale Elementary School. At that time Cale Elementary had three full-time PE teachers: Edwin Hudgins, a continuing contract (tenured) teacher, and Ms. Dugan and Steve Ivory, a thirty-four-year-old black male, both probationary employees. Gerald Terrell, a black male, was principal of Cale School, and Sue Ann Newman, a white female, was assistant principal.

In response to statutory requirements enacted by the Virginia Legislature, the State Board of Education mandated that seventy-five percent of class time had to be spent on core academic subjects in order to increase the students' standardized test scores, or "Standards of Learning" (SOLs). Mr. Terrell was notified by the school board that the Functional Teaching Equivalents (FTEs), a number equating to the number of full-time teaching positions available for Cale's PE, music and art programs, would be reduced for the following academic year to accommodate the mandate. As a result, Mr. Terrell reduced the number of FTEs allocated to the PE department from 3.0 in 1997-98 to 2.5 in 1998-99.

All teaching contracts in the Albemarle School System are either continuing or probationary. Because Mr. Hudgins was tenured, he retained his full-time status and was given a 1.0 FTE. Mr. Terrell allocated the remaining 1.5 FTEs between probationers Dugan and Ivory, giving each a part-time position at 0.75 FTE. This latter, disputed allocation is the basis for this lawsuit.

Ms. Dugan was ending her second year of full-time teaching at Cale in the 1997-98 term. She needed three consecutive years of full-time employment to achieve continuing/tenured status. The reduction to part-time work kept Ms. Dugan from reaching this professional goal. Fortunately, she attained full-time employment in another county and was able to start anew in her quest for the continuing contract classification.

Ms. Dugan contends that in allocating the positions, Mr. Terrell had an obligation to apply established policies and procedures for reduction-in-force (RIF) situations. She argues that if Mr. Terrell had done so, she, as the teacher senior in service, would have been given a full-time teaching position for the 1998-99 school year, and Mr. Ivory a half-time position. Ms. Dugan further argues that Mr. Terrell did not apply the RIF policies and procedures and failed to give her a full-time position because of her age, race, and sex.

The school board's preferred reason for the equal split of the remaining 1.5 FTEs is that the schedule would not work with two full-time teachers and one half-time teacher. Testimony of Mr. Terrell and Ms. Newman corroborates this fact. Ms. Newman stated that she could not schedule a PE teacher half-time because the schedule mandated that someone teach PE at 11:15 a.m. and possibly 11:45 a.m., whereas a half-time teacher would leave at 11:22 a.m. Mr. Terrell admitted that he saw no reason to take seniority into account because he knew that faced with this scheduling problem neither Ms. Dugan nor Mr. Ivory would get a full-time job and he needed to split the remaining FTEs in half anyway.

Ms. Dugan also introduced additional circumstantial evidence regarding her claim of discrimination based on race and sex. Apparently, Mr. Terrell and Mr. Ivory were close friends. The two had been acquainted for several years, and they socialized outside of work. Mr. Ivory even cut Mr. Terrell's hair. Further, Ms. Dugan alleges that when Mr. Ivory obtained a job as the track coach at a nearby high school and was later asked to teach PE as well, Mr. Terrell rearranged Mr. Ivory's teaching schedule at Cale Elementary, allowing Mr. Ivory to leave Cale at approximately 1:15 p.m. each day. This accommodated Mr. Ivory's work at the high school in the afternoons so that he could obtain full-time status. Ms. Dugan also alleges that Mr. Terrell

made no similar efforts on her behalf, and the fact that Mr. Ivory obtained full-time status between two schools run by black principals, one an individual with whom he had a personal relationship, leads to the inference that she was the victim of unlawful discrimination.

The defendant moved for summary judgment on Ms. Dugan's claims in the district court. The magistrate judge recommended denial of that motion but the district court declined to follow the report and recommendation and entered summary judgment in favor of the defendant. In its opinion, the district court held that Ms. Dugan satisfied the minimal requirements necessary to establish a prima facie case. The court also determined that the defendant met its burden of articulating a legitimate, non-discriminatory reason—that the school was prohibited from reducing the hours of Hudgins, the tenured teacher, and that it was unable to split the remaining 1.5 FTEs into one full-time and one half-time position because that would have left PE students without supervision from 11:22 a.m. until 12:45 p.m. each day. The district court also determined that Ms. Dugan did not meet her burden of proving that the defendant's "proferred reason [for her reduction] was mere pretext and that race, age, or gender was the real reason she was denied full-time employment."

We review the district court's summary judgment decision de novo, viewing the record in the light most favorable to the nonmoving party, here Ms. Dugan. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.

Under a somewhat modified *McDonnell Douglas* framework,[1] in

---

[1]The traditional *McDonnell Douglas* framework is slightly changed in a RIF case. Normally, the plaintiff in a discrimination-in-hiring context has to prove that (1) she belongs to a protected class, (2) she applied and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications, she was rejected, and (4) after her rejec-

order to establish a prima facie case of discrimination in a RIF context where the plaintiff is not discharged entirely, Ms. Dugan had to establish (1) that she was in a protected class, (2) she was selected for demotion, (3) she was performing her job at a level that met the employer's expectations, and (4) that her employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234 (4th Cir. 1991).

A similar analysis is conducted for Ms. Dugan's claim of age discrimination, except that the fourth element is satisfied with proof of replacement by a substantially younger worker—not proof of replacement by someone entirely outside the ADEA's protected class. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000) (applying the *McDonnell Douglas* framework in the context of an age discrimination, RIF termination case where performance was the announced basis for the selection of employees).

Once Ms. Dugan establishes a prima facie case, the school board must present a legitimate, non-discriminatory reason for the employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the school board meets its burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case," *id.* at 255 n.10, and Ms. Dugan then bears the ultimate burden of proving that she has been the victim of intentional discrimi-

---

tion, the position remained open and the employer continued to seek applicants from persons with her qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). There are now variations of this basic framework depending on the statute involved and the nature of the claim of discrimination. *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000).

nation. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). That is, Ms. Dugan may show that the employer's proffered explanation is unworthy of credence, thus supporting an inference of discrimination, or offer other forms of circumstantial evidence sufficiently probative of intentional discrimination. *Id.* at 147. Even Ms. Dugan's "prima facie case, combined with sufficient evidence to find that the [school board's] asserted justification is false, may permit the trier of fact to conclude that the [school board] unlawfully discriminated." *Id.* at 148.

Although a very close question, we assume that Ms. Dugan satisfies the requirements necessary to establish a prima facie case of discrimination. She certainly meets factors one through three. She is a white female in a protected age class, who apparently met the expectations of the school board as a PE teacher, and whose hours were reduced as a result of the RIF. And, if we also assume for purposes of summary judgment that there is a policy directly applicable to this RIF situation, and that the policy is as asserted by Ms. Dugan, and we think it is, she meets the fourth element as well. This is because the favored employee, Mr. Ivory, as compared with the more senior Ms. Dugan, is a younger, black male.[2]

The school board maintains that it needed to create blocks of time in the schedule to focus on core SOL curriculum. It further argues that Mr. Terrell simply could not allocate the 2.5 FTEs in PE to include two full-time teachers and one half-time teacher because of class scheduling constraints resulting from these SOL requirements. Deposition testimony supports the school board's assertion that Mr. Terrell

---

[2]Ms. Dugan further advances, as other circumstances giving rise to an inference of discrimination under prong four, that Mr. Terrell was black, he gave 0.25 of Ms. Dugan's time to Mr. Ivory, also a black male and a friend of Mr. Terrell's, and that Mr. Ivory later obtained full-time status with the school board with help from Mr. Terrell's rescheduling, while Ms. Dugan as the more senior white female was reduced to part-time. This evidence does not support an inference that Mr. Terrell failed to treat the protected status neutrally or give Ms. Dugan a full-time position because of her age, race or sex. However, because we assume for purposes of this appeal that there is a RIF policy in existence as claimed by Ms. Dugan, we need not address this issue.

could not allocate the 2.5 FTEs as Ms. Dugan would have preferred. Whether true or not, we must assume, given the evidence presented, that the school board meets its initial burden. *Sears*, 243 F.3d at 852.

Thus, the remaining question is whether Ms. Dugan presents evidence to discredit the school board's proffered nondiscriminatory reason and, if so, whether it leads to the inference that a likely alternative explanation is purposeful discrimination. *Id.* at 854; *Rowe*, 233 F.3d at 829. "While the elements of a prima facie case differ depending on the statute and the nature of the claim, proving a discrimination claim under any of these federal statutes requires a showing that an employer's asserted non-discriminatory reason for the challenged employment action is actually a pretext." *Rowe*, 233 F.3d at 829.

Ms. Dugan states that the school board's proffered reason only explains *why* it was necessary to do a RIF and does nothing to explain *how* Mr. Terrell was to allocate the 2.5 FTEs. We again disagree. The school board clearly articulates its scheduling limitations resulting from the new SOL requirements. Further, Ms. Dugan rests her argument on the contention that Mr. Terrell's failure to apply the mandatory personnel policies creates an actionable inference of discrimination. This, according to Ms. Dugan, is because Mr. Terrell had no authority to use his own discretion to allocate the remaining 1.5 FTEs until he had first complied with the RIF policies.

It is true, according to Mr. Terrell's testimony, that the school did not take seniority into account when allocating the remaining FTEs between Ms. Dugan and Mr. Ivory. However, whether Mr. Terrell was legally required under Virginia law to apply the RIF policy in this instance is not before us. The issue is whether Mr. Terrell's failure to apply the RIF policy was due to legitimate pedagogical concerns or his discriminatory animus toward Ms. Dugan. Our sole concern is whether Mr. Terrell's reasons for reducing Ms. Dugan's hours violated federal anti-bias statutes. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000).

In response to the school board's evidence, Ms. Dugan asserts that Mr. Terrell never tried to work out any other teaching schedule, this error purportedly supporting an inference of invidious discrimination. She also maintains that the court should require the school board to

illustrate why its goals could not be met with her solution. This, of course, misses the mark. It is Ms. Dugan's burden to create an inference that the school board's reason is a pretext for discrimination, *see Reeves*, 530 U.S. at 147, an inference we cannot detect in this case.

Even if there is evidence that the school board erroneously or even purposely misapplied the RIF policy, it is not proof of unlawful discrimination. Ms. Dugan's assertions of discrimination in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for an adverse employment action. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989). "'[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action].'" *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). At the end, the burden remains on Ms. Dugan to demonstrate that the reasons offered by the school board are a pretext for discrimination, or stated differently, that the school board's reason is unworthy of credence to the extent that it will permit the trier of fact to infer the ultimate fact of intentional discrimination. *See Reeves*, 530 U.S. at 147.

Ms. Dugan fails to offer any evidence, direct or circumstantial, that leads to an inference that Mr. Terrell reduced her status to 0.75 FTEs because of her age, race or sex. Ms. Dugan claims, for example, that the fact that Mr. Terrell and Mr. Ivory were social acquaintances, and the fact that Mr. Ivory, with Mr. Terrell's help, was able to secure full-time status within the county school system, supports an implication of discrimination. But, a personal friendship between the decision-maker and another individual is insufficient to establish unlawful discrimination. *Autry v. North Carolina Dep't of Human Res.*, 820 F.2d 1384, 1385 (4th Cir. 1987). Both Ms. Dugan and Mr. Terrell state in their depositions that Mr. Terrell also attempted to assist Ms. Dugan in obtaining supplemental employment within the county, which implies Mr. Terrell actually treated Mr. Ivory and Ms. Dugan similarly. So the fact that Mr. Ivory obtained another job and Ms. Dugan did not is unremarkable. Finally, even though Mr. Terrell rearranged Mr. Ivory's schedule to accommodate Mr. Ivory's supplemental teaching position, Mr. Ivory left Cale Elementary at 1:15 p.m.

each day, a time unaffected by the FTE scheduling restrictions articulated by assistant principal Newman.

In the final analysis, Ms. Dugan presents no facts that tend to show that she received 0.75 FTEs instead of 1.0 FTE because of her age, race, or sex. To the contrary, the record supports the school board's contention that it could not reasonably reconfigure the schedule to accommodate Ms. Dugan and core academic requirements.

### III.

After review de novo, we agree with the district court's analysis. This case is

*AFFIRMED*.