Doris ANDREZYSKI, Plaintiff,

v.

KMART CORPORATION, Defendant.

No. 1:04CV00075.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 1, 2005.

**512**

Hilary K. Johnson, Abingdon, Virginia, for Plaintiff.

Bruce M. Steen and Aaron J. Longo, McGuireWoods LLP, Charlotte, North Carolina, for Defendant.

1. In the Complaint, the plaintiff's surname was spelled "Andrezyski" but in her affidavit and on the records of the company, it is spelled "Andrezywski," which shall be used in this opinion.

## OPINION

JONES, Chief Judge.

In this employment discrimination case, the plaintiff contends that her work hours were reduced from full to part-time because of her age and sex. Because I find that the plaintiff has failed to prove a prima facie case, I will grant summary judgment in favor of the employer.

### I

After exhausting her administrative remedies, Doris Andrezywski[1] filed the present suit against her employer Kmart Corporation ("Kmart") on the basis that it discriminated against her on account of her age and sex in violation of the ADEA[2] and Title VII.[3] After discovery, Kmart filed the present Motion for Summary Judgment, in which it contends that it is entitled to judgment in its favor as a matter of law. The motion has been briefed and argued and is ripe for decision.

The following facts are either undisputed or, where disputed, stated in the light most favorable to the plaintiff.

Andrezywski began working for the Kresge Company, Kmart's predecessor, in 1970. Sometime prior to the summer of 2000, Andrezywski decided to move to the Abingdon, Virginia area. Donna Beale, Personnel Manager of the store where Andrezywski was working at the time, called Jim McFall, the Abingdon store manager, to inquire about open positions. Beale reports that McFall did not want to hire Andrezywski because she made too much money. (Beale Aff. at ¶ 14.) However, after interviewing with McFall and the

2. Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. §§ 621–633a (West 1999 & Supp.2004).

3. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e. to 2000e–17 (West 2003 & Supp.2004).

District Manager, Andrezywski was offered a position at the Abingdon store. On June 10, 2000, Andrezywski transferred to Abingdon.

Kmart classifies employees by "levels." Levels 1 to 4 are non-management positions. Levels 5 and above are management positions. Movement between levels is not uncommon. During her more than thirty years with the company, Andrezywski worked her way up to a Level 6 position, and spent many years at that level. Her last position before transferring to the Abingdon store was Level 3, though she was still paid as a Level 5. Andrezywski was hired into a Level 6 position in Abingdon. In her first three years at the Abingdon store, she moved into a Level 4 position, and then the Level 5 position of Jewelry and Cosmetics Department Manager.

On January 23, 2004, McFall advised Andrezywski that the Kmart corporate headquarters had ordered him to reduce the number of Level 5 and Level 6 employees, and he reassigned Andrezywski to a Level 1 position. However, McFall assured Andrezywski that she would retain her benefits, pay, and full-time status.

One week later, on January 31, 2004, Kmart corporate headquarters again ordered McFall to reduce the number of employees, this time instructing him to cut some full-time Level 1 through Level 4 employees. Corporate headquarters supplied all stores with a document titled "Full-time, Part-time Workforce Adjustment Guidelines". ("Guidelines"), which outlined the procedure store managers were to follow when making employee reductions. The Guidelines required the store's management team to rate eligible employees in four categories: (1) operational excellence, (2) merchandising effectiveness, (3) leadership, and (4) dependability. In addition, the Guidelines defined each of these categories.

In early February 2004, McFall and the Abingdon Kmart's senior management team rated the associates on a scale of 1 to 4, with 1 being the lowest score. McFall compiled and averaged the ratings and ranked the associates based on their final scores. McFall terminated Teresa Potter, who was the lowest ranked associate. He also reduced the next eight lowest ranked associates' hours from full-time to part-time. Andrezywski was included in this latter group and on February 11, 2004, her position was cut from a full-time one with benefits to a part-time one without benefits—the adverse employment action at issue in this case.

Andrezywski contends that age and sex discrimination motivated the decision to reduce her hours. She points to several inconsistencies in the decision making process in support of this contention. Employees' names were not listed alphabetically on the Guidelines score sheet and Andrezywski's name was at the top of the list. The only senior manager who did not participate in the ratings was Missy Davenport who, at times, had been Andrezywski's direct supervisor and could have provided the most accurate information about her performance. A twenty-six-year-old male, Adam Keane, was excluded from the rankings, even though one internal Kmart document describes Keane as a Level 1 employee. Additionally, Andrezywski argues that she received artificially low ratings. For example, her dependability score was lower than those of eleven other employees, even though one manager described Andrezywski's dependability as "just as good" as any employee in the store. (McFall Aff. at 16.) Finally, Andrezywski claims that documents were missing from her employee file, including performance evaluations, nineteen employee of the month awards, and numerous letters of praise from customers. The file did contain two disciplinary actions, which

Andrezywski denies having seen prior to this lawsuit.

Andrezywski took medical leave from Kmart in February 2004, and has remained on leave since that time.

## II

Summary judgment is appropriate when there is "no genuine issue of material fact" given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), *abrogated on other grounds, Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

"Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327, 106 S.Ct. 2548.

## III

Andrezywski claims that Kmart decided to reduce her hours because of her age

and sex, in violation of the ADEA[4] and Title VII.[5] For the following reasons, I find that Andrezywski has failed to create a genuine issue of material fact as to these claims.

Because Andrezywski offers no direct evidence of discrimination, both her age and sex discrimination claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1115, 160 L.Ed.2d 1090 (2005). The *McDonnell Douglas* framework requires the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This requirement "serves an important function in the litigation [by] eliminat[ing] the most common nondiscriminatory reasons for the plaintiff's rejection." *Id.* at 253–54, 101 S.Ct. 1089.

A prima facie case of age discrimination under the ADEA and sex discrimination under Title VII consists of four elements. *Hill,* 354 F.3d at 285. In this case, the parties have stipulated the first three elements of the prima facie case—Andrezywski is female and was fifty-three at the time of the reduction in force ("RIF"), her reduction to part-time status was an adverse employment action, and she was performing at a level that met Kmart's legitimate expectations. (Def.'s Mem. Supp. Mot. Summ. J. at 11, n. 5.) The issue

---

**4.** Under the ADEA, "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1999).

**5.** Under Title VII, "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's ... sex." 42 U.S.C.A. § 2000e–2(a)(1) (West 2003).

before me is whether Andrezywski has presented evidence sufficient to raise a genuine issue of material fact as to the fourth element.

To satisfy the fourth element, a plaintiff ordinarily must show that she was replaced by someone who was not a member of the protected class, such as a significantly younger worker or a male. *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998). However, replacement is impossible to demonstrate when many employees are laid off at once and no new employees are hired, as happens during a RIF. When the plaintiff's claim, as here, is that the adverse employment action occurred pursuant to a RIF, a different standard applies. *See Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 720–21 (4th Cir. 2002).

■ After a RIF, the plaintiff may demonstrate the fourth element of her prima facie case of age or sex discrimination by showing that "her employer did not treat ... [age or sex] neutrally, or there were other circumstances giving rise to an inference of discrimination." *Id.* (internal citations omitted). This is a "relatively easy test." *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir.1984). Alternatively, when performance is the announced basis for selection the plaintiff may demonstrate her prima facie case by showing that the "process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing." *Corti v. Storage Tech. Corp.*, 304 F.3d 336, 341 n. 6 (4th Cir.2002) (Title VII); *see Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir.2000) (ADEA).

## A

■ Andrezywski first claims that Kmart discriminated against her on the basis of her age when it reduced her hours to part-time. In this case, the question is whether Kmart's actions give rise to an inference of discrimination, or whether the RIF produced a workforce including some workers substantially younger than Andrezywski whose performance was inferior to Andrezywski's. Andrezywski has failed to create a genuine issue of material fact as to this question.

The Fourth Circuit has repeatedly found that there is no inference of discrimination when the employer adheres to neutral, established policies and procedures for a RIF. *See Dugan*, 293 F.3d at 721 (finding an inference of discrimination where, according to the employer's own RIF policy, it should have cut the hours of a younger worker, rather than those of the plaintiff); *Gonzalez v. Royal Indem. Co.*, No. 98–1632, 1999 WL 1242437, at *1 (4th Cir. Dec.22, 1999) (unpublished) (finding an inference of discrimination where the company had considered eliminating employees during the RIF on the basis of age); *Herold v. Hajoca Corp.*, 864 F.2d 317, 320 (4th Cir.1988) (approving directed verdict and JNOV decisions because reasonable jury could have found an inference of discrimination where the employer failed to follow its own policy of laying off workers with the least seniority first).

Kmart had in place a gender-neutral RIF policy—the Guidelines. The Guidelines even included a broad anti-discrimination statement reminding managers that "[w]orkforce decisions must be based on objective job related criteria and must not be based on race, color, religion, *sex*, national origin, sexual orientation, *age*, disability, marital status, height and/or weight." (Def.'s Mem. Supp. Mot. Summ. J. at Ex. A (emphasis added).) The Guidelines specifically indicated that seniority would be considered only in the event of a tie in performance point scores.[6] (*Id.*)

---

**6.** It is true that, in some cases, seniority can be a proxy for age. Here, Andrezywski's pay

Not only did Kmart have an age-neutral RIF policy, it followed that policy when selecting Andrezywski for a reduction in hours. Andrezywski first argues that Kmart deviated from its own policy when it allegedly removed positive documents from her personnel file and included false disciplinary forms, or "write-ups." However, Andrezywski has failed to show that these alleged deviations were deviations from Kmart's RIF procedure, or that they impacted the decision to reduce her hours. The Kmart Guidelines stated, "Important: When rating each associate ensure that your analysis is based on *observed, objective job-related performance.*" (Def.'s Mem. Supp. Mot. Summ. J. at Ex. A (emphasis in original).) Andrezywski herself states that McFall and other members of the management team never looked at her file. (Pl.'s Resp. Def.'s Reply at 6.) In addition, any missing, positive documents were from Andrezywski's tenure in Maryland, not in Abingdon. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 3–4.) Therefore, that information would not have been relevant to Andrezywski's observed performance in Abingdon.

Andrezywski argues that Kmart deviated from its policy when McFall moved her from the Cosmetics Manager position to a Level 1 position in January 2004, rather than transferring her to an open Level 5 department manager position. The demotion in turn made her eligible for the RIF. The decision to demote Andrezywski is not the adverse employment action that is the subject of this suit and Andrezywski has not demonstrated that it was connected to the RIF that is the subject of this litigation. Nor has Andrezywski demonstrated that her demotion was motivated by discriminatory reasons. However, the defen-

dant has presented undisputed evidence that McFall did not know about the pending Level 1–4 cuts at the time he demoted Andrezywski. The evidence does not permit an inference that McFall, for discriminatory reasons, somehow orchestrated this series of events so that he eventually could reduce Andrezywski's hours.

Andrezywski next argues that Kmart deviated from its RIF policy by failing to include Missy Davenport, a member of the senior management team, in the evaluation process. At times, Davenport was Andrezywski's direct supervisor and arguably could have provided the most accurate information about her performance. Andrezywski alleges that Davenport was at the store and could have participated in the evaluations. Even if that were true, it does not raise an inference of discrimination. Furthermore, Andrezywski testified that McFall, not Davenport, always prepared her performance evaluations. (Andrezywski Dep. at 42.) It would be pure speculation to assume that Andrezywski's scores would have been higher had Davenport participated in the ratings.

Andrezywski also argues that Kmart deviated from its policy by failing to include Adam Keane, a younger male, in the RIF. Andrezywski points to an internal Kmart document as evidence that Keane was a Level 1 employee. (Def.'s Mot. Summ. J. at Ex. D.) The document, titled "Current Employees at Store # 3689," lists Adam Keane as a Garden Shop Customer Service representative, a Level 1 position. (*Id.*) Kmart contends that Keane was a Level 5 Garden Shop Manager not subject to the RIF. Exhibit D alone is not sufficient to create a genuine issue of material fact on this question. The exhibit has no date.

---

per hour is higher than some other employees because of her seniority; however, she continues to accrue the same credit toward her retirement whether she works full or part-

time. Nonetheless, seniority was not a factor in the decision to reduce Andrezywski's hours.

The most recent entry was added in March 4, 2004, one month after the RIF and after Keane's own hours were reduced. Exhibit D lists Andrezywski as a Service Desk Associate, but Andrezywski states that, at the time of the RIF, she was working in electronics and cosmetics. (Andrezywski Dep. at 33.) Keane's exclusion from the RIF process does not support an inference of sex discrimination.

Here, even taking the evidence in the light most favorable to the plaintiff, Kmart followed its primary RIF policies and procedures. Any failure by the company to do so does not rise to the level necessary to support an inference of sex discrimination. Andrezywski has failed to create a genuine issue of material fact as to whether Kmart treated age neutrally, or whether there were other circumstances giving rise to an inference of discrimination.

■ Andrezywski still could establish a prima facie case of sex discrimination by showing that the RIF process produced a residual work force that included some persons who were substantially younger than her and who were performing at a level lower than she. *See Stokes,* 206 F.3d at 430. However, Kmart did not allow any employee with evaluation scores lower than Andrezywski's to remain full-time. The company terminated the lowest ranking employee and then reduced the hours of the next eight lowest ranking associates.

Andrezywski contends that her RIF evaluation scores were artificially low, but there is no indication that they were low for a discriminatory reason. For example, Andrezywski points out that she received only a "2" out of "4" for dependability, even though McFall stated that Andrezywski's attendance at work was as good as any other employee's. Even if attendance were the only factor in the dependability determination, which it was not, Andrezywski still has not shown that she received only a "2" for any discriminatory reason.

The "Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ....' [Its] sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir.1998) (internal citations omitted). Andrezywski has failed to create a genuine issue of material fact as to whether Kmart's RIF process produced a residual work force with younger, lower performing employees.

B

■ Andrezywski's second claim is that Kmart discriminated against her on the basis of her sex when it reduced her hours to part-time. The question before me is whether Kmart's actions give rise to an inference of discrimination, or whether the RIF produced a workforce including some men whose performance was inferior to Andrezywski's. Even recognizing that the prima facie burden is a "relatively easy test," *Young,* 748 F.2d at 197, I find that Andrezywski has failed to demonstrate the fourth element.

Only one of Kmart's fifteen Level 1–4 employees, William Hughes, was male. Hughes was included in the RIF. His performance scores placed him among the top eight associates. Andrezywski has not presented evidence that, despite receiving higher performance scores, Hughes really was performing at a level below Andrezywski's. In addition, Kmart cut Hughes' hours after the RIF.

As already discussed, it is questionable whether Keane, the only other male associate, was eligible for the RIF. Nonetheless, his hours also were reduced. Furthermore, even if Keane should have been included in the RIF, Andrezywski has not presented any evidence that he was ex-

cluded because he is male or that he was performing at a lower level than she was. A plaintiff's prima facie case raises an inference of discrimination when the court presumes that the acts complained of, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089 (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). The treatment of Keane and Hughes is otherwise explained. However, even if there were no other explanation for Kmart's decision not to reduce Keane's and Hughes' hours as part of the RIF, that decision does not raise an inference of sex discrimination.

No finder of fact could reasonably conclude that Kmart reduced Andrezywski's hours because of her age or sex. Based on the record before me, I find that the plaintiff has not met her prima facie burden of offering evidence adequate to create an inference that Kmart based its decision to reduce her hours on discriminatory criteria illegal under either the ADEA or Title VII.

### IV

The plaintiff understandably feels that after thirty-five years of faithful employment, she deserved to be the last employee laid off. While most people would agree, federal law does not recognize the violation of that principle as a basis for a discrimination lawsuit. Regardless of my sympathy for Andrezywski's situation, I must find that she has failed to present a proper case for relief and accordingly the defendant's Motion for Summary Judgment will be granted and final judgment entered in its favor.