**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-2168**

———————

DAVID CHRISTIAN, III,

        Plaintiff – Appellant,

    v.

SOUTH CAROLINA DEPARTMENT OF LABOR LICENSING AND REGULATION;
CATHERINE TEMPLETON; SAMUEL WILKINS; WILLIAM COOK, a/k/a
Ron; CHARLES IDO; HOLBROOK ALVEY, in their official and
individual capacities, a/k/a Ryan,

        Defendants – Appellees,

and

LYNN RIVERS,

        Defendant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Columbia. Terry L. Wooten, Chief District
Judge. (3:12-cv-01382-TLW)

———————

Argued: January 28, 2016          Decided: June 1, 2016

———————

Before GREGORY and HARRIS, Circuit Judges, and DAVIS, Senior
Circuit Judge.

———————

Affirmed by unpublished opinion. Senior Judge Davis wrote the
opinion, in which Judge Gregory and Judge Harris joined.

———————

**ARGUED:** Julius Wistar Babb, IV, J. LEWIS CROMER & ASSOCIATES,
LLC, Columbia, South Carolina, for Appellant. Jonathan Pharr

Pearson, FISHER & PHILLIPS, LLP, Columbia, South Carolina; Molly H. Craig, HOOD LAW FIRM, Charleston, South Carolina, for Appellees. **ON BRIEF:** James Lewis Mann Cromer, J. LEWIS CROMER & ASSOCIATES, LLC, Columbia, South Carolina, for Appellant. Kenneth P. Woodington, Daniel C. Plyler, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellee Alvey. Eugene H. Matthews, RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for Appellee Wilkins. Damon C. Wlodarczyk, RILEY POPE & LANEY, LLC, Columbia, South Carolina, for Appellee Cook. Brian Edward Johnson, HOOD LAW FIRM, Charleston, South Carolina, for Appellee Templeton. Katherine Anne Phillips, MALONE, THOMPSON, SUMMERS & OTT, LLC, Columbia, South Carolina, for Appellee Ido.

———————

Unpublished opinions are not binding precedent in this circuit.

2

DAVIS, Senior Circuit Judge:

David Christian, III appeals the district court's grant of summary judgment to his former employer, the South Carolina Department of Labor, Licensing, and Regulation ("LLR"), and several individually named defendants, on his claims of discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2012), and his claim of civil conspiracy under South Carolina law. For the reasons set forth below, we affirm.

I.

A.

Christian, who is African-American, worked for LLR from 2003 until his resignation in 2012 following the events at issue in this appeal. Christian worked in the agency's Professional and Occupational Licensing division, which provides administrative services for forty professional and occupational boards and commissions responsible for regulating their respective professions.

When Christian began his tenure at LLR, each of these boards issued its own licenses with administrative support from LLR personnel dedicated to each board. In 2008, Adrienne Youmans, then-director of LLR, created the Office of Licensure and Compliance ("OLC") within the Professional and Occupational Licensing division in order to consolidate licensing staff

3

working throughout the agency into one subdivision. OLC was charged with performing licensing services, including the issuance of licenses, for most of the professional and occupational boards administered by LLR. Youmans appointed Christian to lead the newly formed subdivision and promoted him to the position of Assistant Deputy Director.

Many of the boards and a number of LLR personnel were dissatisfied with these changes. Shortly after the creation of OLC, the Board of Pharmacy sought and received an opinion from the South Carolina Attorney General concluding that LLR personnel did not have the authority to issue licenses for the practice of pharmacy. And in late 2009, two OLC employees wrote an anonymous letter to members of the South Carolina General Assembly outlining a number of problems they perceived within OLC and sharply criticizing Christian.

The anonymous letter set off something of a political kerfuffle and, specifically, prompted two hearings by the South Carolina House of Representatives. Representative William Sandifer, III, who chaired the House of Representatives subcommittee with oversight of LLR, testified during his deposition for this case that a number of his colleagues had approached him about the concerns outlined in the letter. Other representatives had also reported a high number of constituent complaints about the agency to Sandifer. Youmans testified at

4

one of the House hearings. In her subsequent deposition for this case, she stated that, during the hearing, Sandifer expressed numerous concerns about Christian in particular, which she found to be unusual. Youmans also testified that she believed the anonymous letter was "full of lies, rumors, and innuendos." J.A. 1202.[1] In June 2010, twenty-seven legislators requested that the Legislative Audit Council conduct a review of OLC.

In November 2010, Nikki Haley was elected governor of South Carolina. She nominated Catherine Templeton to replace Youmans as Director of LLR. At the press conference announcing Templeton's nomination, Haley referred to "unacceptable" licensure wait times and characterized Templeton as someone who could fix a struggling agency. J.A. 970–71. Templeton herself alluded to complaints about licensing and suggested that she would improve efficiency by returning licensing functions to the boards.

During Templeton's confirmation hearing, legislators emphasized that Templeton needed to repair the agency. Prior to her confirmation, Templeton spoke to members of the Boards of Accountancy and Medical Examiners and received a letter from the

---

[1] Citations to the J.A. refer to the Joint Appendix submitted by the parties in this case.

Board of Pharmacy and several others detailing a number of complaints with OLC. Templeton introduced herself to the chairs of the legislative subcommittees with oversight of LLR, and she met with the state's Budget and Control Board. She also met with Youmans and two LLR employees, Rion Alvey and Jim Knight.

After her confirmation as director of LLR, Templeton made a number of staffing changes. In addition to OLC, the Professional and Occupational Licensing division had two other subdivisions—the Office of Board Services, led by Assistant Deputy Director Randy Bryant, and the Office of Investigations and Enforcement, led by Assistant Deputy Director Rion Alvey. Templeton promoted Alvey to Deputy Director of LLR and asked Bryant to retire, which he subsequently did. She appointed Charles Ido to serve as interim Assistant Deputy Director of the Office of Board Services and Mark Dorman to serve as the interim Assistant Deputy Director of the Office of Investigations and Enforcement.

Templeton also embarked on a significant reorganization of the agency. From January to August 2011, LLR executed a reduction-in-force ("RIF") of six different areas of the agency, resulting in the termination of sixty-nine full-time, permanent employees. As part of this restructuring, Templeton announced that licensing functions would be returned to the boards and OLC would be dismantled through a RIF of all of its employees,

including Christian. The RIF of OLC affected forty-eight full-time, permanent employees. Of the affected employees, thirty-two were African-American, twelve were white, and four were identified as members of "other" races or ethnicities. Most of these employees, including Christian, were offered positions as administrative assistants performing licensing or compliance functions for the various boards.

After the RIF was announced, Christian interviewed for three available positions: Assistant Deputy Director of the Office of Board Services, Assistant Deputy Director of the Office of Investigations and Enforcement, and a newly created Assistant Deputy Director position in charge of inspectors in LLR's Drug Diversion program. Christian was interviewed for all three positions at the same time. Alvey, a white male, and Lynn Rogers, an African-American female, conducted the interviews. They ultimately hired Ido and Dorman, the interim directors of the Office of Board Services and the Office of Investigations and Enforcement, as the permanent heads of those subdivisions. For the newly created position in the Drug Diversion program, they chose Ron Cook, an LLR employee who had already been performing the duties now assigned to the Assistant Deputy Director of that program. Ido, Dorman, and Cook each had the highest score for their respective positions according to LLR's interview criteria; Christian had the second-highest.

7

Christian did not apply for any other positions within LLR, and eventually accepted the administrative assistant position offered to him following the RIF. As Assistant Deputy Director of OLC, Christian had been classified as a "Band 8" employee with an annual salary of $78,775. As an administrative assistant, his classification fell to "Band 4" and his annual salary was reduced to $31,843. He resigned from LLR in January 2012.

B.

Christian filed a multi-count complaint against LLR alleging violations of Title VII, and against Catherine Templeton, Samuel Wilkins, Lynn Rivers, Ron Cook, Charles Ido, and Rion Alvey (collectively, the "individual defendants"), asserting claims under 42 U.S.C. §§ 1983, 1985 (2012) and under South Carolina law for civil conspiracy. Following discovery, the defendants each filed a motion for summary judgment. The motions were referred to a Magistrate Judge, who issued a Report and Recommendation recommending that the court grant summary judgment to the defendants on all claims. Overruling Christian's timely objections, the district court adopted the Report and Recommendation in its entirety. Christian timely appealed.

II.

We review a district court's decision to grant summary judgment de novo. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 565 n.1 (4th Cir. 2015). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. at 568 (quoting Fed. R. Civ. P. 56(a)). In determining whether a genuine issue of material fact exists, we "view the facts and all justifiable inferences arising therefrom in the light most favorable to . . . the nonmoving party." Id. at 565 n.1 (citation and quotation marks omitted). However, "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (citation and quotation marks omitted).

## A.

Christian argues that the district court erred in granting summary judgment to LLR on his Title VII claims. We disagree. Upon careful review of the record in this case, we conclude that summary judgment in favor of LLR on Christian's termination and non-selection claims is appropriate.[2]

---

[2] Christian makes passing reference to his hostile work environment, constructive discharge, and disparate impact claims in his opening brief. He fails to include any argument on these
(Continued)

A plaintiff may avoid summary judgment on a discrimination claim under Title VII through two avenues of proof: by "presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision," or by relying on the McDonnell Douglas[3] burden-shifting framework. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004), recognized as abrogated on other grounds, Foster v. Univ. of Md.-E. Shore, 787 F.3d 243 (4th Cir. 2015)). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case. Hill, 354 F.3d at 285. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. Id. Once the employer meets this burden, "the McDonnell Douglas framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] discrimination vel non." Id. (alterations in original) (quoting

---

claims, however, and has thus waived our review of them. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (citations omitted).

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

<u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000)). The plaintiff must present evidence that "demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." <u>Diamond</u>, 416 F.3d at 318. Christian proceeded under both of these methods in opposing summary judgment before the district court.

Christian argues that the district court failed to view his evidence of discrimination in its totality, or as a "convincing 'mosaic' of circumstantial evidence such that a reasonable jury could infer discriminatory intent." Br. Pl.-Appellant 23-24 (citing <u>Cason v. S.C. State Ports Auth.</u>, No. 2:11-cv-2241-RMG, 2014 WL 588065, at *4 (D.S.C. Feb. 14, 2014)). He refers to the Seventh Circuit's "convincing mosaic" approach, under which a plaintiff proceeding by direct and indirect evidence may prevail by presenting a "'convincing mosaic' of circumstantial evidence" that would permit an inference of discrimination. <u>See</u> <u>Coleman v. Donahoe</u>, 667 F.3d 835, 860 (7th Cir. 2012) (citation omitted). Christian urges us to view his proffered evidence through this lens.

This Circuit's precedent already requires us to consider evidence of discrimination in the context of the record as a whole. <u>See</u> <u>Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 512 (4th Cir. 1993). At oral argument, counsel was unable to identify

11

any significant difference between our existing precedent and the "convincing mosaic" approach. Accordingly, we see no reason to adopt the formulation that Christian advances here and will instead evaluate the totality of the evidence to determine whether he has shown that the RIF and his non-selection for the available management positions were motivated by discriminatory intent.

1.

Christian has failed to present evidence raising a genuine issue of material fact about whether race motivated LLR's decision to eliminate his position as Assistant Deputy Director of OLC through a RIF. While he points to substantial amounts of testimony and documentary evidence that, in his view, support his claim, none of the evidence he identifies is admissible, probative evidence of discrimination.

The record is replete with evidence that Templeton, some LLR employees, several South Carolina legislators, and the state's newly elected governor believed that LLR was failing to perform its licensing function properly. LLR has consistently maintained that it conducted a RIF of OLC to reorganize the agency's licensing operations to address these problems. Christian argues that the creation of OLC improved LLR's ability to timely issue licenses and that LLR had no evidence that

12

returning licensing functions to the boards was more effective than retaining OLC.

Christian's attack on LLR's rationale for the RIF is misplaced. The subjective opinions of Christian and other LLR employees about whether the agency's reasons for the RIF were well founded or foolish, without more, are insufficient to raise an inference of discrimination. See Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 722–23 (4th Cir. 2002) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)). "[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action]." Id. at 272 (alterations in original) (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)). Based on the record before us, no reasonable jury could find LLR's stated reason for the RIF to be a fabrication to conceal discrimination.

Christian also questions the implementation of the RIF. He disagrees with LLR's decision to retain the Office of Board Services division, which he contends was led primarily by white managers. He also argues that the manner in which LLR executed the RIF functionally restricted his rights as a state employee to obtain other positions within LLR. These complaints simply reflect Christian's disagreement with the agency's decision to eliminate OLC through a RIF of its employees and are not

13

probative evidence of discrimination for the reasons just discussed. Christian points to nothing to indicate that LLR's implementation of the RIF actually violated its RIF policy, and even if he did, such evidence, standing alone, is not proof of discrimination. Dugan, 293 F.3d at 722 (noting that evidence that an employer erroneously or even purposely misapplied a RIF policy does not prove discrimination).

Christian's other attempts to support his claim that the RIF was racially motivated also fall flat. He directs us to statistics of the racial composition of OLC, which show that the majority of OLC personnel were African-American. Christian contends that these figures illustrate the RIF's disproportionate impact on African-American employees and therefore support his claim that the agency's decision to eliminate his position as Assistant Deputy Director of OLC by conducting a RIF of the subdivision was discriminatory. However, he provides no comparison of OLC's racial composition to that of the other subdivisions of the Division of Professional and Occupational Licensing, or to that of the other twenty-one employees subject to a RIF during the reorganization of LLR during Templeton's tenure. Without context or analysis, the figures Christian offers are not probative of discrimination. See Henson v. Liggett Grp., Inc., 61 F.3d 270, 276–77 (4th Cir. 1995).

14

Christian also tries to show that, after the RIF, white OLC employees were treated more favorably than African-American employees through preselection of white employees for available positions. He offers no statistical evidence to support this claim. Instead, he relies entirely on speculation and inadmissible hearsay regarding how LLR filled available positions following the RIF. And as Christian concedes, preselection, standing alone, is not evidence of discrimination. Br. Pl.-Appellant 31-32 (citing Blue v. U.S. Dep't of Army, 914 F.2d 525, 541 (4th Cir. 1990)). Christian has not, therefore, demonstrated that white employees were, in fact, treated preferentially after the RIF, and, even if LLR had preselected the individuals Christian identified for their respective positions, their preselection, without more, would not be evidence of LLR's discriminatory intent.

Finally, Christian points to testimony about employees' use of a racial slur and a previous racially charged incident that occurred at the agency, as well as testimony by other employees who believed that Christian was treated unfairly because of his race. Careful inspection of the record reveals that no witness testified that he or she had personally heard another employee use a racial epithet, only rumors to that effect. Rumors regarding the use of racial slurs by unnamed LLR employees are not admissible evidence, and the subjective beliefs of

15

Christian's co-workers regarding the RIF of OLC and Christian's subsequent non-selection for a management position with LLR carry no more weight than Christian's own bald assertions that LLR's conduct was racially motivated. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant to the question of [discrimination], not the opinions of [the plaintiff's] co-workers or third parties."), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Christian particularly focuses on the alleged conduct of Ron Cook, a co-worker who obtained one of the available Assistant Deputy Director positions for which Christian also interviewed. Christian asserts that Cook circulated a racist video involving President Obama, told racist jokes, referred to African Americans as "you people" or "people of your persuasion," and used a racial epithet in reference to an African-American LLR employee. While "[d]erogatory remarks may in some instances constitute direct evidence of discrimination," the remark "cannot be stray or isolated and '[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination].'" Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (alterations in original) (quoting

16

McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir. 1991)), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010) ("[I]n the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced.").

Christian counters that Cook was actually a driving force behind the RIF, and therefore his racist behavior is evidence of the discriminatory intent behind it. Christian asserts that Cook claimed to have influence with South Carolina Governor Nikki Haley because Cook's wife cared for the Haley children and that Cook had a "hit list" of people that he wanted to see terminated from the agency. Cook, however, had no actual influence over LLR's decision to eliminate OLC through a RIF of its employees. Cook testified that he did not have a friendship with Governor Haley, had not discussed LLR with her, and had not had any contact with her or her family since election night. Templeton testified that she did not consult with Cook on any personnel matter. Christian also could not have reasonably believed that Cook had such an ability to dictate personnel decisions at LLR. At the time of the RIF, Christian held a higher position of authority in LLR than Cook. Christian also testified that he did not believe that Cook had any influence

17

with the governor until the RIF took place and the individuals Cook purportedly identified on his "hit list" were terminated. Because Cook had no influence over LLR's decision to execute the RIF, and Christian could not have reasonably believed that he did, his alleged comments have no nexus with LLR's challenged actions and therefore are not relevant to Christian's claim of discrimination.

Accordingly, considering Christian's proffered evidence and arguments in the context of the record as a whole, we conclude that he has failed to present direct or circumstantial evidence that the RIF of all OLC employees that resulted in Christian's termination was racially motivated. For the same reasons, we conclude that Christian, relying on the same evidence, has failed to demonstrate that LLR's legitimate, non-discriminatory reason for the RIF—dissolution of OLC in response to perceived problems with licensing—was a pretext for discrimination under the McDonnell Douglas framework.[4]

2.

Christian has also failed to present evidence creating a genuine issue of material fact about whether his non-selection

---

[4] In reaching this conclusion, we assume without deciding that Christian has established a prima facie case.

18

for the three available Assistant Deputy Director positions was due to race.

"A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006) (citations omitted). We "assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question." Id. The plaintiff need not have been the better qualified candidate for the position, but must show "evidence which indicates that [the employer's] stated reasons for promoting [the other candidate] over [the plaintiff] were a pretext for discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005).

LLR has consistently maintained that the candidates chosen for the positions at issue were simply better qualified for their respective positions than Christian. Christian contends that a reasonable jury could find that his non-selection was the product of discrimination because he was interviewed only once for all three positions, the individuals who were ultimately selected for those positions were already serving in an interim capacity or otherwise fulfilling the responsibilities of the position, he was scored on only one score sheet for all three

19

positions, one interviewer's score sheet indicates that the interviewer changed two of his ratings to give Christian higher marks, and he had "extensive relevant work experience" for all three positions. Br. Pl.-Appellant 48-49.

Even making all reasonable inferences in favor of Christian, he has not produced sufficient evidence to avoid summary judgment on his non-selection claim. As we have already noted, preselection, standing alone, does not raise an inference of discrimination. Neither does the fact that he had only one interview and score sheet for all three positions, or the fact that one of his interviewers raised his score two points from what he had initially marked.

Most importantly, Christian does not argue that the individuals who were selected were not qualified for the positions they were awarded. A comparison of the qualifications of the successful candidates with Christian's qualifications readily yields the conclusion that the candidates chosen for each of the Assistant Deputy Director positions were extremely well-qualified for those positions, whereas Christian had less relevant experience. Ido, who was awarded the position managing the Office of Board Services, had twenty-one years of experience at LLR and had performed well as the interim Assistant Deputy Director of that subdivision. Dorman, who was awarded the position managing the Office of Investigations and Enforcement,

had over thirty years of experience at LLR and had acted as the manager of that subdivision for two years while the Assistant Deputy Director was on detail. Cook, who was awarded the newly created Assistant Deputy Director position of the Drug Diversion program, had already been successfully managing that program for two years when the position was created. In addition, Ido, Dorman, and Cook all had experience that was directly relevant to their respective positions prior to assuming those positions or the associated responsibilities on an interim basis. Christian, in comparison, had five years of experience at the agency and no experience in any of the subdivisions that he sought to lead. "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (citations omitted).

Accordingly, we conclude that Christian has failed to present evidence that LLR acted with discriminatory intent when it awarded the management positions to Ido, Dorman, and Cook instead of him, or that LLR's reasons for choosing those individuals were a pretext for discrimination. LLR is entitled to summary judgment on Christian's non-selection claim.

B.

21

Christian also contends that the individual defendants should not have received summary judgment on his civil conspiracy claim under South Carolina law. Again, we disagree.

In order to prevail on a claim of civil conspiracy under South Carolina law, a plaintiff must prove "(1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages." Pye v. Estate of Fox, 633 S.E.2d 505, 511 (S.C. 2006) (citations omitted). The "essential consideration" of a civil conspiracy claim is "whether the primary purpose or object of the combination is to injure the plaintiff." Id. (citation omitted). Christian failed to identify any evidence creating a genuine dispute of fact on this element of his civil conspiracy claim. Christian relies on the same evidence he cites to support his Title VII claim. The evidence is insufficient here to show that LLR's stated reasons for the RIF of OLC and Christian's non-selection for the Assistant Deputy Director positions were false for the same reasons discussed above. By parity of reasoning, a failure of proof to show racial animus in employment decision-making is a failure of proof to show that an object of a conspiracy was to harm a plaintiff by inflicting a race-based job injury.

Christian also points to Templeton's actions prior to her confirmation as evidence that she and the other alleged co-conspirators acted with a primary purpose of harming him. He

22

notes that Youmans testified that Templeton raised the anonymous letter criticizing Christian's management of OLC when the two met just before Templeton's confirmation, and he argues that Templeton's meetings with the governor, Representative Sandifer, members from the Boards of Accountancy and Medical Examiners, and various LLR employees prior to her confirmation "show the motives and personal vendetta Templeton held against Plaintiff" and evidence her intent to "impair Plaintiff's employment and target African-American management of OLC." Br. Pl.-Appellant 54. No reasonable jury could make such an inferential leap based on the record in this case. While a jury is charged with choosing between conflicting inferences from circumstantial evidence, "[p]ermissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995). That an incoming agency director would learn about complaints concerning the agency and meet with individuals dissatisfied with that agency's performance prior to her confirmation is entirely unremarkable. The inference that Christian asks us to draw from these unexceptional facts rests wholly upon his own speculation and conjecture about the purpose and result of these meetings. At summary judgment, that is not

23

enough.  The individual defendants were thus entitled to summary judgment on Christian's civil conspiracy claim.

## III.

For the reasons set forth above, we affirm the district court's grant of summary judgment to LLR and the individual defendants.

AFFIRMED